E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY, WASHINGTON

July 19 2021 1:51 PM

KEVIN STOCK
COUNTY CLERK
NO: 21-2-06715-0

1
2
3
4
5
6
7
8

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF PIERCE**

9
10

| | |
|---|---|
| JERRY OWENS,<br><br>                              Plaintiff,<br><br>        v.<br><br>CACI INTERNATIONAL, INC.; CACI NSS, INC. d.b.a. CACI; and CACI, INC. – FEDERAL d.b.a. CACI,<br><br>                              Defendants. | No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>I.    WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY – WA STATE COMMON LAW TORT |

11
12
13
14
15
16
17

COMES NOW the Plaintiff, Jerry Owens ("Plaintiff"), by and through his attorney of record, STEPHANIE HENDERSON STOCKER of HENDERSON LAW GROUP, PLLC, and states his cause of action against the Defendants, as follows:

18
19
20

**I.    <u>NATURE OF THE CASE</u>**

21

1.1    This is an action for relief brought by Plaintiff against his former employer, CACI INTERNATIONAL, INC., CACI NSS, INC. doing business as CACI, and CACI, INC. – FEDERAL doing business as CACI ("Defendants"), for unlawful employment practices against Plaintiff during his employment, culminating in the adverse action of Plaintiff's unlawful

22
23
24
25
26

**COMPLAINT FOR DAMAGES - 1**

termination.  Plaintiff alleges that Defendants, by and through its agents and representatives, unlawfully committed the common law tort of wrongful termination in violation of public policy when it made Plaintiff's working conditions to intolerable after he raised concerns about an employee's failure to follow Defendant's policy and procedures, which led to unnecessary costs. This action seeks to provide relief to Plaintiff, who was adversely affected by such practices.

## II.    PARTIES

2.1    Plaintiff is an individual, a resident of the State of Washington, Thurston County, and former employee of Defendants. As an "inhabitant" of the State of Washington, Plaintiff is protected from violations of the Washington State Common Law Tort.

2.2    Defendants CACI International Inc., CACI NSS, Inc. doing business as CACI, and CACI, Inc. – Federal doing business as CACI are publicly traded companies based on Arlington, VA, and doing business in Washington State as "CACI NSS, Inc." and "CACI, Inc. – Federal." Together with its subsidiaries, Defendants' enterprise technology and expertise plays a vital role in national security, safeguarding troops, and enabling the government to deliver cost-effective and high-quality support for all Americans. At all relevant times Defendants were an employer within the meaning of Washington State law. All acts and omissions of said Defendants' employees, supervisors, managers, agents and/or officers were performed within the course and scope of Plaintiff's employment and were performed for the benefit of said Defendants.

## III.    JURISDICTION AND VENUE

3.1    Plaintiff's brings this lawsuit within the applicable WA State three-year statute of limitations following the May 21, 2019 date of his unlawful termination from Defendants.

**COMPLAINT FOR DAMAGES - 2**

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

1   3.2   Jurisdiction is proper in this court pursuant to RCW 2.08.010.

2   3.3   Venue is proper in this court pursuant to RCW 4.12.020 and RCW 4.12.025.

3   ## IV.   STATEMENT OF FACTS

4   4.1   Plaintiff was hired by Defendants on February 15, 2015 as a Network
5   Administrator Lead working out of Joint Base Lewis McChord ("JBLM"). Plaintiff was
6   promoted to Kuwait Country Manager in 2015, SWA Manager in 2017, and Engineering Liaison
7   in 2018.

8   4.2   Plaintiff has maintained a Top-Secret Clearance – he initially received his Top-
9   Secret Clearance in 1984 after enlisting in the Army and retained it for actively for twenty (20)
10  years until he retired from the military. Once working for Defendants, Anteon/General Dynamics
11  Information Technology re-activated Plaintiff's Top-Secret Clearance for roughly four (4) more
12  years – after those four (4) years, it was downgraded to a Secret clearance as Plaintiff's position
13  did not require the Top-Secret Clearance to function and the cost to maintain it was quite high.
14  Plaintiff has maintained a Secret Clearance since then.

15  4.3   As part of certain positions with Defendants, international assignments are
16  required. In March 2018, the Mil-Air Waiver was altered, and employees of government-
17  contracted companies were required to use military transportation for international travel unless
18  they received a waiver. During this time and aware of this change, Iraq's Country Manager Paul
19  Gilmore ("Manager Gilmore") needed to get to Kuwait – Iraq and the government refused to
20  alter the rules so he could use the commercial transportation. Regardless, Manager Gilmore used
21  commercial transportation to travel to Kuwait and claimed that his doing so was an accident

**COMPLAINT FOR DAMAGES - 3**

**HENDERSON LAW GROUP, PLLC**
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

when questioned about his noncompliance with the rules.  Defendants ultimately determined that Manager Gilmore photoshopped a waiver to allow him to fly commercially.

4.4     Beginning April 3, 2018, emails were exchanged between Manager Gilmore and Deputy Program Manager Richard Needham ("Manager Needham") looking for an explanation as to why Manager Gilmore used commercial transportation after the government denied his request for a waiver. Although Plaintiff was not included on these emails, Operations Manager Gerald Soucy ("Manager Soucy") and Travel Coordinator Felicia Krapf ("Coordinator Krapf") both called Plaintiff to discuss Manager Gilmore's commercial transportation – neither was buying Manager Gilmore's "accidental" submission of a modified Mil-Air Waiver.

4.5     Plaintiff confronted Program Manager Needham about his failure to include him on the emails regarding Manager Gilmore, as Manager Gilmore reported to Plaintiff. Program Manager Needham reluctantly forwarded the emails to Plaintiff. Upon reviewing the emails, Plaintiff knew Manager Gilmore's travel was no accident and advised that Manager Gilmore should be terminated for forging the Mil-Air Waiver, a government-issued document, and for violating the Iraq travel procedure outline in the Theatre Travel SOP – Manager Soucy agreed that Manger Gilmore should be terminated. Plaintiff saw Manager Gilmore's willingness to ignore laws, as well as program policies, and procedures for his own benefit demonstrated his unsuitableness to be in a leadership position and breached trust with the customer (US Government, MC4 Program).

4.6     Once Plaintiff realized that Program Manger Needham was trying to cover up Manager Gilmore's transgression and that Manager Gilmore was not going to be terminated or removed from the Iraq Lead Position despite his actions, Plaintiff used the emails between

**COMPLAINT FOR DAMAGES - 4**

**HENDERSON LAW GROUP, PLLC**
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

Program Manager Needham and Manager Gilmore as a basis to file an anonymous Ethics Complaint on the "Convercent" website on April 12, 2018. The Convercent website managed anonymous reporting for several large companies, including Defendants. Only after Plaintiff sent several inquiries as to the status of his complaint and called the Convercent technical support, were Defendants contacted regarding Plaintiff's Ethics Complaint. Defendants then closed the complaint without explanation. As a result, Plaintiff resubmitted an inquiry in June 2018, which was immediately closed without feedback.

4.7     On June 8, 2018, Program Manager Needham asked Plaintiff to perform a verbal counselling with Manager Gilmore over the phone then follow up via email to create a record of the counselling.  The counselling covered Manager Gilmore's poor performance as a System Administrator, including his failure to apply system updates and patches making them vulnerable to hacking and viruses, his failure to supervise one of his team sites (Erbil), specifically the Erbil System Administrator Terrance Smith ("Administrator Smith"), and the fact that Plaintiff was receiving customer complaints from the area.

4.8     Towards the end of the counseling, upon receiving more resistance from Manager Gilmore, Plaintiff said, "God damnit, you [Manger Gilmore] will do this" to Manager Gilmore. Manager Gilmore then hung up the phone and still refused to give the system passwords to Trainer Romano. Plaintiff sent an email to Manager Gilmore apologizing for his outburst but reaffirming his direction to give the passwords to Trainer Romano – Plaintiff then notified Program Manager Needham regarding what had transpired.

4.9     Between June 18, 2018 and June 23, 2018, Plaintiff was interviewed by Defendant's Human Resources ("HR") and admitted to swearing during the heated counseling

**COMPLAINT FOR DAMAGES - 5**

conversation with Manager Gilmore. Plaintiff further informed HR that he sent Manager Gilmore an email apologizing for his behavior immediately after and included Program Manager Needham on the email – Plaintiff denied ever calling him "Boy," a racial slur.  Plaintiff also told HR that he believed Manager Gilmore made this accusation as a desperate ploy to save his job. HR cleared Plaintiff of using the racial slur yet advised him to expect a written warning.

4.10    Program Manager Needham then advised Plaintiff of his plan for him directly supervise Paul Gilmore, while Plaintiff supervised the other Country Managers – Plaintiff said this plan was unacceptable as Manager Gilmore had already been given too many opportunities to be successful as a country manager and was a detriment to the Program.  Plaintiff stated that if Manager Gilmore was not removed as Country Manager, he would step down as the SWA Manager because it would be obvious to employees that Plaintiff had no power to manage – he did not want his reputation within the program trashed by Manager Gilmore's performance which Plaintiff could not correct.

4.11    Trainer Romano ultimately had to get the passwords from the Unit IT guy, yet nothing was ever done to handle Manager Gilmore's treatment of Trainer Romano along with his aggression and refusal to follow directions.

4.12    On June 28, 2018, Plaintiff was given a Written Warning from Program Manager Needham. The written warning stated that Plaintiff failed to meet acceptable behavior standards in Defendant's Policy/Procedure 03.08.10 – Employee should behave in a businesslike manner. The letter further instructed Plaintiff to engage all employees with respect and communicate with them using appropriate (non-offensive) language.

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

4.13    In July 2018, Plaintiff received his Annual Performance Appraisal covering his employment from July 1, 2017 through June 30, 2018. Evaluating his position as an emerging leader, Plaintiff was rated as Consistently Meets Expectations or Frequently Exceeds Expectations. The notes describe Plaintiff as a very valuable member of the MC4 team. As a result of his ratings, Plaintiff also received a merit increase to his pay.

4.14    Plaintiff then started working as a System Administrator for the Western RSO, working for Manager Martin and Deputy Manager/Logistics Lead Larry Duppler, though Program Manager Needham and Defendants never transferred his supervision. Therefore, Plaintiff was still being supervised by Program Manager Needham.

4.15    In September 2018, SysAdmin Pait was leaving his position to return to deployment in Iraq. Onsite Engineer Kristina Bolland ("Engineer Bolland") told Plaintiff that he should put his name in for consideration to fill the Engineering Liaison position. Plaintiff put his name in for the position then heard the U.S. Government encouraged his selection as the customer, yet Program Manager Needham was reluctant to make the decision – the Engineering Liaison position generally reports to Program Manager Needham but SysAdmin Pait reported to the Eastern Region Manager Owen Hardy.

4.16    By the beginning of October 2018, Plaintiff was promoted to the Engineering Liaison position; Plaintiff took over for SysAdmin Pait who wanted to deploy to Iraq. Plaintiff also continued to author a monthly Tech bulletin called "Tips and Tricks" which was very well received by Senior Staff as well as the Field Technicians.

4.17    Both Program Manager Needham and Manager Romano reached out to Plaintiff for advice on how to handle Erbil in or around December 2018. Plaintiff's advice was the same

**COMPLAINT FOR DAMAGES - 7**

to both – either SysAdmin Pait or Manger Romano should go to Erbil to fix all the systems that need fixed, patch up customer relations, and Administrator Smith should be replaced.   When discussing this issue with Program Manager Needham, Plaintiff also added that he told him this would happen, as he had already warned Program Manager Needham that Manager Gilmore was covering for Administrator Smith in Erbil. Program Manager Needham was hopeful that Manager Romano or SysAdmin Pait would be able to resolve this issue.

4.18    After this conversation, Plaintiff was convinced that Manager Dills was more of a figurehead, and Program Manager Needham was really running the show.

4.19    Between April 8, 2019 and April 26, 2019, Plaintiff was deployed to the BDSC Army Hospital in Iraq. Plaintiff travelled with Engineer Bolland to Iraq in order to perform a software upgrade to the hospital's inpatient system.

4.20    On April 23, 2019, Plaintiff participated in an MC4 Operations telecon with SysAdmin Pait, Manager Romano, Engineer Bolland – the group gathered around the speaker phone for the telecon. Trainer Sturgis was also in the room waiting to go to dinner with the group after the telecon, but was not involved in the conference. Trainer Sturgis was new and was on her first deployment – as she was awaiting her country residency Visa to get approved, she spent her time helping the local team but was not regularly in the office due to not feeling well. As a result, Trainer Sturgis mainly stayed in temporary lodging and only showed up to go to dinner each day. Once the telecon finished that day, the group went to dinner together.

4.21    About a month later on May 20, 2019, Plaintiff was instructed to dial into a telephone conference with Program Manager Needham, and Human Resources Mike Griffith ("HR Griffith"). Plaintiff was merely informed that someone had made a complaint against him

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

– the complaint was regarding an alleged statement Plaintiff made to the effect of "someone should put a noose around his neck." This statement was allegedly made in reference to Manager Allen during a weekly operations telephone conference while he was abroad. Although a specific date was not given, Plaintiff deduced that it must have been either April 16, 2019 or April 23, 2019.

4.22    Plaintiff immediately denied making such a statement and that he would never make such a statement. Plaintiff recalled making a comment to the effect of "I [Plaintiff] love Marcus to death, but sometimes I [Plaintiff] wish he would stay in his own lane." This was the only slightly negative comment Plaintiff recalled making. Plaintiff was asked to name everyone else who was in the room when the statement was made, and he did so Defendants could contact them. Defendants agreed to provide Plaintiff with contact information for as HR representative who would investigate this matter. Plaintiff was then placed on administrative leave.

4.23    Plaintiff was shocked by these accusations, especially coming almost a month after the fact. He did not recall anything of substance that took place during the April 23, 2019 telecon, but reached out to everyone who was in the room that day in hopes if clarifying what everyone else remembered. SysAdmin Pait, Manager Romano, and Engineer Bolland all returned his calls and did not know who made such a complaint – they all also denied hearing Plaintiff make such a statement.

4.24    The following day, on May 21, 2019, Plaintiff was again contacted by Program Manager Needham and HR Griffith and informed that his employment was being terminated for violation of company standards of conduct. Plaintiff received an email from Program Manger Needham the same day with a Letter of Termination attached.

**COMPLAINT FOR DAMAGES - 9**

4.25     As a result of Defendants' wrongful termination in violation of public policy of Plaintiff, Plaintiff has suffered the following emotional and physical repercussions on an ongoing basis since April 2018:

- Depression;
- Insomnia;
- Lack of Motivation;
- Stress; and
- Weight gain.

## V.     CAUSES OF ACTION

### A.  FIRST CAUSE OF ACTION
### WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY
*Violation of Washington State Common Law Tort*

5.1     Washington State recognizes a common law cause of action for wrongful discharge in violation of public policy. *Thompson v. St. Regis Paper Co.*, 102 Wash.2d 219, 685 P.2d 1081 (1984).  The 2015 decision of *Rickman v. Premera Blue Cross*, 358 P.3d 1153, 184 Wn.2d 300 (Wash. 2015) the court reaffirmed the protections to employees, public or private, for raising concerns that are of interest to public policy.

5.2     "The tort of wrongful discharge became the subject of an academic treatise by Professor Henry Perritt." *Rickman*, at 310 (*citing* Henry H. Perritt, Jr., *Workplace Torts: Rights and Liabilities* § 3.14, at 75-76 (1991)).  The court in *Rickman* reasoned that, "[i]n *Gardner*, we looked to Professor Perritt's treatise to embrace 'a more refined' analysis, in light of the unusual facts of that case." *Id.* (citing *Gardner v. Loomis Armored, Inc.,* 128 Wn.2d 931, 940, 913 P.2d 377 (1996)).  "The Perritt test segments its analysis into four parts:

1.  The existence of a clear public policy (the clarity element);

2.  That discouraging the conduct in which the [plaintiff] engaged would jeopardize the public policy (the jeopardy element);

**COMPLAINT FOR DAMAGES - 10**

3.  That the public-policy-linked conduct caused the dismissal (the causation element); and

4.  That '[t]he defendant [has not] offer[ed] an overriding justification for the dismissal [of the plaintiff] (the absence of justification element).'"

*Id.* at 310 (*citing Gardner* at 941).

5.3     Here, Plaintiff raised good faith concerns that were clearly of interest to public policy. The questions raised by Plaintiff regarding Defendants' decision to cover up Manager Gilmore's transgression and allow the U.S. Government to pay for Manager Gilmore's commercial transcript against company policy and procedure was a waste of state resources – meets the four-part test for the tort of Wrongful Discharge in Violation of Public Policy.

5.4     Plaintiff meets the four (4) elements required to establish a claim for wrongful termination in violation of public policy:

1.  The existence of a clear public policy (the clarity element);

2.  The conduct in which the Plaintiff engaged was necessary for the effective enforcement of the above-outlined public policy (the "Jeopardy" element);

3.  That the public-policy-linked conduct caused the dismissal (the causation element); and

4.  That '[t]he defendants [have not] offer[ed] an overriding justification for the dismissal [of the plaintiff] (the absence of justification element).'"

5.5     Conceptually, wrongful discharge is akin to retaliatory dismissal under RCW 49.60. *Cagle,* 106 Wn.2d at 918. Therefore, as a general matter, a plaintiff may prove causation for wrongful discharge in violation of public policy in the same way she proves retaliation in other contexts, such as discrimination. A plaintiff need prove only that an illegal reason was a substantial factor in the employer's decision to take adverse action to prevail. *Mackay v. Acorn*

**COMPLAINT FOR DAMAGES - 11**

**HENDERSON LAW GROUP, PLLC**
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

*Custom Cabinetry Inc.,* 127 Wn.2d 302, 309-11, 898 P.2d 284 (1995). Absent a direct statement of motive by the employer – which is rare – it requires a reasonable inference based on circumstance. The timing of discharge is perhaps the most persuasive evidence of a causal connection. *See, e.g.*: *Allen v. Iranon*, 283 F.3d 1070, 1077-78 (9th Cir. 2002) (holding 11-month period between protected speech and punishment indicative of retaliatory motive).

> Discharge some length of time after the employee's filing of a claim will be less likely to reflect an improper motive connected with that claim. Thus, ... in establishing the prima facie case, "[p]roximity in time between the claim and the firing is a typical beginning point, coupled with evidence of satisfactory work performance and supervisory evaluations. Evidence of an actual pattern of retaliatory conduct is, of course, very persuasive." (Footnotes omitted.) 1 L. Larson § 6.05[5], at 6-51.

*Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 69, 821 P.2d 18 (1991).

5.6    "Proximity in time" is only one of the many factors courts look at to decide "Causal Link." During the time between Plaintiff's termination and his reporting what he reasonably believed to be misconduct on the part of his employer, there was a pattern of retaliatory conduct.

> Evidence of an actual pattern of retaliatory conduct is, of course, very persuasive." (Footnotes omitted.) 1 L. Larson § 6.05[5], at 6-51. ***Wilmot v. Kaiser Aluminum & Chem. Corp.***, 118 Wn.2d 46, 69, 821 P.2d 18 (1991).  *See also, **Allen v. Iranon***, 283 F.3d 1070, 1077-78 (9th Cir. 2002) (holding 11-month period between protected speech and punishment indicative of retaliatory motive).

*Id.*

5.7    Here, Plaintiff meets the causation element required for the Tort of Wrongful Discharge in Violation of Public Policy.  Defendants acted in violation of public policy (via Deputy Program Manager Richard Needham) when it:

**COMPLAINT FOR DAMAGES - 12**

**HENDERSON LAW GROUP, PLLC**
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

- **April 2018:** Silenced Plaintiff's concerns about Manager Gilmore's behavior and Defendants' failure to address it;
- **June 2018:** Defendants closed Plaintiff's anonymous Ethics Complaint on the Convercent website without proper investigation – complaint was filed on April 12, 2018;
- Then created a terrible work environment for Plaintiff in which he was subjected to the following by Defendants:
  - o Forced to give a verbal counseling to Manager Gilmore due to his continued performance issues on **June 8, 2018**.
  - o Backed Plaintiff into stepping down as the SWA Manager by failing to remove Manager Gilmore from the Country Manager position – Plaintiff refused to have his reputation trashed by Manager Gilmore's performance issues in **June 2018**.
  - o Subjected Plaintiff to multiple Human Resources investigations based on baseless accusations made by Defendants' employees that Plaintiff made inappropriate statements including racial slurs – claims which have no witnesses and Plaintiff vehemently denies in **June 2018** and **April to May 2019**.
- Then terminated Plaintiff's employment absent an overriding reason not related to public policy on **May 21, 2019**.

## A.  Damages for Wrongful Termination in Violation of Public Policy

5.8     Pursuant to Washington State law, damages available to Plaintiff for Defendants' wrongfully terminating him in violation of public policy are nearly identical to those available in a WLAD action – economic and non-economic.  *Cagle v. Burns & Roe*, 106 Wn.2d 911, 726 P.2d 434 (1986) (the tort of wrongful discharge in violation of public policy is an intentional tort and emotional distress damages are recoverable). Under the WLAD, Plaintiff is entitled to recover damages, including an award of compensatory damages, economic damages, recovery for personal injuries for emotional distress, humiliation, and pain and suffering, as well as attorney's fees and costs.

## VI.     CLAIM FOR RELIEF

WHEREFORE PLAINTIFF respectfully prays for relief that judgment be entered against Defendants as follows:

COMPLAINT FOR DAMAGES - 13

A.    Back pay and front pay damages for an amount to be proved at trial;

B.    Actual and/or general damages in an amount to be proven at trial.

C.    Damages for future loss, emotional distress, pain and suffering, inconvenience, mental anguish and loss of enjoyment of life and any medical expenses flowing therefrom, in an amount to be proved at trial;

D.    The Plaintiff's reasonable attorney fees;

E.    Costs of suit;

F.    Prejudgment interest at the highest lawful rate in an amount to be proved at trial;

G.    Tax consequences, including but not limited to compensation for any tax penalty associated with a recovery;

H.    Judgment in favor of the Plaintiff;

I.    Lost fringe benefits; and

J.    Such other and further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury in this action of all issues so triable.

DATED this 19 day of ___July___, 2021.

**HENDERSON LAW GROUP, PLLC**

By: _____
Stephanie Henderson Stocker
WSBA No. 33567
Henderson Law Group, PLLC
1800 Cooper Point Road SW, Bldg. 1
Olympia, WA 98502
Ph: (360) 943-7710
stephanie@hendersonlaw.net
Attorney for Plaintiff Owens

**COMPLAINT FOR DAMAGES - 14**

1

2                    **CERTIFICATION OF PLAINTIFF**

3          **JERRY OWENS,** hereby certifies as follows:

4          I am the Plaintiff in the above-entitled action. I have read the foregoing Complaint, know

5   the contents thereof, and believe the same to be true.  I certify and declare that the foregoing is

6   true and correct, under penalty of perjury under the laws of the State of Washington,

7   RCW 9A.72.085.

8          DATED at _LACEY_, _WA_, this _17_ day of _July_, 2021.

9                           City              State

10

11

12                                    _(signature)_

13                              **JERRY OWENS**

14

15

16

17

18

19

20

21

22

23

24

25

26

**COMPLAINT FOR DAMAGES - 15**

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782